Modified.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.

35 C.C.P.A. (Patents)

**Application of HALL.**

**Patent Appeal No. 5458.**

Court of Customs and Patent Appeals.

May 4, 1948.

William D. Hall, pro se.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD, and JACKSON, Associate Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the final action of the Primary Examiner in rejecting claims 3, 4, 18, 19, 29, 30, 32, 33, and 35 to 40 inclusive of an application for a patent, serial No. 347,951, filed July 27, 1940, for "Control Systems." One claim was allowed.

The examiner had before him thirty-eight claims. Appeal was taken from his decision to the Board of Appeals on twenty-six claims. The appeal here involves the above-numbered fourteen claims.

The claims were rejected for reasons of indefiniteness, lack of proper disclosure, functionality, inaccuracy, incompleteness, exhausted combination, aggregation, and for want of patentability over the prior art reading as follows: Scudder 1,583,238, May 4, 1926; Nelson, 2,172,667, September 12, 1939; Black, 2,207,776, July 16, 1940; Spackman, 2,243,609, May 27, 1941.

For the reason that all of the rejections are before us for review, it is necessary to deal individually with each of the claims and the grounds for their rejection.

Appellant in his brief states that "Appellant has invented a simple and practical

control system for burners." He presented to the Patent Office an application, the specification of which fills twenty-three printed pages of the record. The Primary Examiner in a so called "Brief Statement of Invention" has taken four pages to describe appellant's device. The board refers to the disclosure as "briefly described" in the examiner's statement. The brief of appellant appears to agree with the description of his device given by the Primary Examiner. The solicitor does not attempt to give his own description of the device defined by the rejected claims. The record here is long, the number of claims many, and the brief of appellant voluminous in dealing with a "Simple and Practical Control for Burners."

The primary object of appellant's device is to provide a heater which may be operated in an automobile without being connected to the engine thereof, and, therefore, capable of supplying heat when the automobile engine is not running. The invention is not limited, however, to such use, as appellant states in his specification that it may be used "almost anyplace that fuel burning heaters are now used."

We will describe appellant's device somewhat more concisely as it appears from the simple diagrammatic drawings of the application. We deem it proper to observe at this point that the allowed claim appears to us to be a simple claim for a simple invention.

Appellant's diagrammatic drawings disclose a fuel tank from which fuel is drawn into a mixer from which it enters a combustion chamber in which there is a ceramic disc designed to maintain ignition once the fuel has been ignited, and also a hot wire igniter for the original ignition of the fuel. From the combustion chamber carrying the heat generated therein is a pipe which is connected to a pipe radiator. At the end of the radiator pipe and extending therein is a blower fan, called by appellant a "pump" which, by reason of its revolving speed, draws the heat through the system and blows it finally from the exhaust end of the radiator pipe. The blower fan or pump together with another fan in axial alignment therewith are operated from a single motor. The second fan blows air over the combination chamber and radiator. The air, heated by contact with the radiator and combustion chamber, circulates through the area sought to be heated. The pumping fan is driven by the motor through a clutch which includes a bimetallic strip, and the circulatory fan is likewise driven through another clutch which includes a bimetallic strip. A thermostatic strip is shown for further control of the elements hereinbefore described, and the speed of the motor is adjustable by a rheostat.

The patent to Scudder relates to a heating method and device in general relation to a hot air heating installation. As illustrated, a heating system is shown as applied to an oil burning installation in a furnace for heating a dwelling. The patent discloses a furnace plant in which a single motor forces air through a conduit into a combustion chamber and also sucks the air to be heated from another conduit into an enclosed space surrounding the heating radiator. The system contains a switch which thermostatically controls the speed of the motor. It is clear that, depending upon the speed with which the motor is running, the supply of air to the combustion chamber may be varied in proportion to the amount of air blown by the fan over the heating element so that maintaining of the heat means at a relatively predetermined temperature is attained in the system of the patent.

The Nelson reference relates to an air conditioning type of a heating furnace of the forced draft type. It discloses a furnace using oil as a fuel and shows a single motor which drives two fans for circulating air over a combustion chamber, and also a blower fan for "supporting combustion of fuel."

The patent to Black is for an automobile heating device. It discloses a combustion chamber in which there is a refractory member. The fuel supply is gasoline or other hydrocarbon fuel which is brought into the combustion chamber through a conduit. There is shown a fan similar to the pump fan of the involved application, by means of which the flow of fuel from its source into the combustion chamber is effected. The device also includes a second

fan designed to propel heated air from over the radiator into the passenger compartment. A single motor is provided for driving both fans. The patent device, however, does not show anything similar to the thermostatic couplers disclosed in the involved application.

The Spackman patent relates to a heater for motor vehicles and particularly to controls for regulating the amount of air heated and circulated by the heating apparatus. The device of the patent contains a thermostatic element which operates in the same manner as the thermostat disclosed in appellant's application. The heater of the patent shows a combustion chamber in which the fuel mixture is lighted by an igniter, and the heat generated in the combustion chamber is brought into the radiator. A motor is shown which is designed to drive a propulsion fan for circulating air over the radiator thus bringing heat into the interior of the passenger compartment. The amount of heat is controlled by a button handle aided by a switch blade including a bimetallic thermostatic element. The switch blade is positioned near the end of the radiator.

Claim 3 reads as follows: "3. In a fluid fuel burning heating system, a combustion chamber, a source of fluid fuel supply, a pump for effecting flow of fuel from said source into said combustion chamber to constitute the main fuel supply for the combustion chamber, heat dissipating means cooperating with said combustion chamber, said heat dissipating means including a circulating fan, a single motor for driving both said pump and said fan, and thermal means responsive to temperature conditions of said heating system for mechanically disconnecting said pump and said motor in response to predetermined changing thermal conditions of the system." That claim was rejected as being broader than the disclosure of the application. It was held the claim is so broadly drawn that it could cover a system in which the disconnection of the motor from the pump or blowing fan would be effected whenever the temperature is reduced and also when the temperature is increased. The tribunals of the Patent Office stated that appellant's application discloses no

system to effect such disconnection when the temperature is reduced and for that reason held that the claim covers more than is disclosed. The Primary Examiner observed it would be obvious that a device in which the pump would be disconnected from the motor when the temperature would fall would lack any utility. Whether or not that observation of the examiner is correct, we are convinced from a careful examination of the involved application that claim 3 is broader than the disclosure. We agree that it has been properly rejected.

Claim 4 reads as follows: "4. In a fluid fuel burning heating system, a combustion chamber, a pump for effecting flow of fluid fuel into said combustion chamber, heat dissipating means communicating with said combustion chamber, said heat dissipating means including a fan for carrying heat away from the heat dissipating means, a common motor which consitutes the sole means for driving both said pump and said fan, and thermal means responsive to the temperature of said heat dissipating means for controlling the operation of said motor." It was rejected as being fully met by the Black reference or as substantially met by the Nelson patent. In the devices of each of those patents, a single motor drives the fuel injecting means and the heat distributing means. The Black patent discloses a thermostat responsive to space temperature. That thermostat is a control means such as is defined in claim 4. There can be no doubt but that the thermostat of Black is affected by the temperature produced in the combustion chamber. We think it would be obvious to apply such thermostatic control to the Nelson structure. Appellant in his brief, with respect to claim 4, states that the issue may be reduced to the simple question, "Was it proper to construe the words 'responsive to the temperature of said heat dissipating means' as reading on a room thermostat"? If a room thermostat is not "responsive" to a heat dissipating means, we do not know what use such thermostat would have. Clearly the rejection of claim 4 by the tribunals below was proper.

Claim 18 reads as follows: "18. In a heating system, fuel burning heating means, means to affect the operation of said heating means including a switch that operates in response to small reversals in the direction of the temperature change of the heating means, means operable to vary the fuel flow to said fuel burning heating means, and means for maintaining said heating means at a relatively predetermined temperature in response to wide variations in the feed of fuel thereto." That claim was rejected as being vague and indefinite for the reason that it does not in any way indicate what the effect of the "said heat means including a switch" may be on the operation of the heat means. The board held that, insofar as the claim can be considered definite, it "consitutes a mere list of elements without specifying the relations between them whereby they will cooperate to perform any function." The "means for maintaining said heating means at a relatively predetermined temperature in response to wide variations in the feed of fuel thereto" reads on the device of the Scudder patent in the same manner as it reads on the involved application. In the Scudder patent, the fan brings in the air to be heated and also supplies the air for fuel combustion.

With respect to claim 18, appellant argues that the limitation "a switch that operates in response to small reversals in the direction of the temperature change of the heating means," should warrant allowance of that claim. That limitation is only a statement of function. In re Hill, 158 F.2d 1001, 34 C.C.P.A., Patents 783. In our opinion claim 18 is a mere recitation of elements without specifying the relationship between them whereby they will cooperate. In re Collins, 75 F.2d 1000, 22 C.C.P.A., Patents, 1053.

Claim 19 was rejected as fully met by the Scudder or the Black reference in view of the patent to Spackman. The claim reads as follows: "19. In a heating system, fuel feeding means having means cooperating therewith for burning the fuel and including means operable to greatly reduce the quantity of fuel fed to the fuel burning means, control means operable in response to a large drop in temperature of the system for stopping the feed of fuel thereto, and means for maintaining the system at a relatively predetermined constant temperature when the feed of fuel is intentionally reduced by operation of the first-recited means, whereby the control means does not stop the feed of fuel when the supply of fuel is intentionally reduced." The control means called for in the claim is a manual motor control as illustrated in one of the figures of appellant's application. The device of the Scudder patent shows such control, and, in our opinion, it does not involve invention to provide a manual speed control on any motor. The Primary Examiner considered that the thermostat switch of the Scudder and the Black patents would respond to small reversals in the direction of the temperature change of the heater means recited in the claim. He stated "In the Scudder device, the heating element will be maintained at a substantially constant level regardless of the absolute heat production. The addition of a thermostatic safety switch to either Scudder of [sic] Black which will stop the motor and consequently the fuel feed when there is a large drop in temperature is conventional practice and does not involve invention." Appellant states that if that last quoted sentence is taken at face value, it implies that on the date of the examiner's statement other persons had already applied such thermostats to the Scudder and Black devices. Appellant says he probably should have challenged such statement as inaccurate and required proof thereof, but did not do so because such statement does not allege such conventional practice prior to appellant's filing date, and that, therefore, the use by the examiner of the words in the present tense indicates only that such things were conventional on the date when the statement was written. Appellant's position in that respect is not sound. It is true that matters known only after the filing date of an application are not available as references against such application. In re Lewis, 96 F.2d 1009. 25 C.C.P.A., Patents, 1273, 1275.

The statement concerning "conventional practice" as used by the examiner in relation to claim 19, in our opinion, intends

to relate to what was known in the art at the time of the filing of the application. Surprisingly enough appellant concedes in his brief that thermostatic switches for stopping fuel motors on a large drop of temperature is old. In this connection he stated "Had those switches been used on an ordinary heater whose fuel rate was reduced, such a switch would shut the heater down whenever the fuel rate was intentionally reduced." We can see no error in the rejection of claim 19.

Claim 29 was rejected as inaccurate. It reads as follows:

"29. In a heating system, a sealed combustion chamber, a fuel feed line to said combustion chamber, an exhaust line therefrom, movable means including a pump in said exhaust line to create such a high vacuum in said exhaust line as to draw fuel in said fuel feed line and said movable means also including air flow producing means for producing a stream of moving air to carry away the heat generated by combustion of the fuel, said pump and said air flow producing means being mechanically connected together, and means responsive to the temperature of a portion of the system in the vicinity of the said combustion chamber to prevent existence of a flame in said chamber without at the same time stopping said air flow producing means." It was held below that the application does not disclose "means responsive to the temperature of a portion of the system in the vicinity of the said combustion chamber to prevent existence of a flame in said chamber without at the same time stopping said air flow producing means." Appellant contends that if the heating system overheats, one of his thermoclutches disconnects the fuel pump so that no fuel can flow. That may be true enough, but it is also true, as pointed out by the board in its decision, that any fuel which may remain in the combustion chamber can burn, and there is no positive means disclosed which would prevent the existence of a flame in the chamber. Of course when the fuel supply is stopped, the flame will sooner or later become extinguished, but such extinguishment is not a prevention of the existence of such flame. It appears to us that the claim is not supported by the disclosure of appellant's application.

Claim 30 was rejected as unpatentable over the Black reference in view of the Spackman patent. The claim reads as follows: "30. In a space heater; a vacuum system comprising a sealed combustion chamber, a fuel feed line to said combustion chamber, and an exhaust line therefrom including a radiator communicating with said combustion chamber and heated by the exhaust gases therefrom; an electrically operated igniter for igniting the feed of fuel passing to said chamber; thermostatic means affected by a rise in temperature of the vacuum system for deenergizing said igniter; movable means for setting such a high vacuum in said exhaust line as to draw fuel to said combustion chamber through said fuel feed line; means mechanically connected to and driven mechanically by said movable means for blowing air over said radiator and therefrom to the space to be heated; and means comprising a thermostatic element near the vacuum system and in the path of said air for preventing existence of proper vacuum conditions to support combustion in response to an excess temperature of said element." Claim 30 was rejected on the Black patent in view of the patent to Spackman, the board stating that the claim is directly readable on the Black patent except for "means comprising a thermostatic element" which appears in the last clause of the claim. That means, as was pointed out below, merely defines a thermostatic control for the motor, and since the device of the Spackman patent discloses a thermostat, no invention would be involved in providing one to control the motor. A thermostat is disclosed in the Spackman patent near the heater which corresponds to the "vacuum system" of the claim. It is true, as pointed out by appellant, that the Board of Appeals in its decision stated that the Black patent does not disclose anything like appellant's thermostatic coupler, and the board did not hold that the thermostat in the Spackman system controls a fuel motor. The

system in the Black patent contains a thermostat which responds to rise in temperature above a predetermined maximum which will open the main circuit to the motor which drives both fans of the Black device. It was held by the examiner that it was not inventive to place the switch means of the Black system in the position of the switching means of the Spackman patent, namely "in the path of the said air" as called for in the claim. It is clear to us that claim 30 was properly rejected.

Claim 32 reads as follows: "32. In a heating system; a combustion chamber; a fuel feed line thereto and a radiator cooperating therewith; an electrical resistance igniter for initiating combustion of fuel at said combustion chamber; means for effecting feed of fuel through said fuel feed line and for blowing air to be heated over said radiator, comprising a common single driving means, an electrical circuit which when deenergized stops said driving means; and thermostatic switching means, responsive to the temperature of the radiator, for controlling the energization of said igniter and of said circuit according to combustion conditions." That claim was rejected on the prior art in the same relationship as claim 30. Appellant contends that the final clause in claim 32 provides for a switching means designed to control the igniter in his combustion chamber and his motor. He urges that such means and such relationship is not disclosed in either the Black or Spackman system. An examination of the Spackman patent convinces us that his thermostatic switch controls both his igniter and his motor by means of which his fan is driven. It would not require invention to apply the same dual control in a system such as is shown in the Black patent, where the motor also drives a fuel pump. We are in accord with the reasoning of the tribunals of the Patent Office in their rejection of that claim.

Claim 33 reads as follows: "33. In a heating system, a space where fuel is burned, a fuel feed line to said space, movable means including a pump to effect feed of fuel through said fuel feed line to said space and also including air

flow producing means mechanically connected to said pump for producing a stream of air which carries away the heat generated in said space, and means responsive to the temperature of the stream of air immediate of the heating space for stopping combustion in said space by reducing the feed of fuel thereto without reducing the speed of the air flow, in response to predetermined changing thermal conditions." That claim was held to be unpatentable because of the inclusion of the word "space" as a positive element. The board stated that it recommended, under the provisions of rule 139 of the Rules of Practice, U. S. Patent Office, 35 U.S. C.A.Appendix, that the word "space" wherever it occurs in claim 33 be changed to the word "chamber" in order to avoid the inclusion of the word "space" which the board stated to be an intangible element. The board agreed that, if such changes were promptly made, the claim would be allowed. The examiner rejected that claim on the prior art, but the board did not affirm that ground of rejection. Appellant contends that the fuel burning chamber is not a major element in claim 33, referring to his specification wherein it is stated that appellant's system is not limited to use in automobiles, but may be used in almost any place where fuel burning heaters are used. Appellant mentioned that gas fireplaces and other heaters do not have a "chamber." The word "space" in our opinion can not be considered as anything tangible. It is something without limits, or might be aptly described as "nothing." It is incomprehensible to us why appellant should object to the substitution of the word "chamber" for his word "space." He surely could not operate his system with the horizon of the earth and the arc of the sky as his boundaries, and how in the world he could carry away heat generated in "space" is beyond comprehension.

Claim 35 reads as follows: "35. In a heating system, a combustion chamber having a fuel feed input and an exhaust output, a radiator having an input fed by said exhaust output and having an exhaust end, a thermostat situated near and

responsive to the temperature of the exhaust end of said radiator, a circulating fan for passing a stream of air across said radiator whereby the amount of heat carried away from said radiator depends on the speed of said fan, a pump which effectuates feed of fuel through said combustion chamber depending on the speed of said pump, and a common motor driving said fan and pump, and means for varying the speed of said motor; said fan, radiator and thermostat being so constructed and arranged that operation of the motor at different speeds will effect such flow of air across said radiator as to effectuate a heat dissipation effect proportional to the change in fuel rate of said pump and thereby prevent wide variations in the temperature of said thermostat when the speed of the pump is varied." The claim was rejected below as unpatentable over the Black reference in view of the patents of Spackman and Scudder. The rejection of the claim by the examiner as incomplete and functional was not sustained by the board which ruled that the claim does not differentiate from the prior art merely by reason of the functional language contained therein. The expression "which effectuates feed of fuel through said combustion chamber depending on the speed of said pump," and "said fan, radiator and thermostat being so constructed and arranged that operation of the motor at different speeds will effect such flow of air across said radiator as to effectuate a heat dissipation effect proportional to the change in fuel rate of said pump and thereby prevent wide variations in the temperature of said thermostat when the speed of the pump is varied" are the portions of the claim properly held by the tribunals below to be in functional language. In our opinion, the ruling of the board is correct. It is contended by appellant that claim 35 calls for a preferred location of the thermostat adjacent to the radiator. He states in his brief that the Black system does not show "a thermostat situated near and responsive to the temperature of the exhaust end of said radiator;" that it does not show "means for varying the speed of said pump" and

that it lacks a showing of the entire last clause in the claim following the semicolon. The system in the Spackman patent shows a thermostat switch means adjacent to the radiator. A means for varying the speed of the pump is disclosed in the Scudder device which shows a rheostat for varying the speed of the driving motor of the device. Claim 35, as far as its structural elements are concerned, is clearly unpatentable over the prior art as held below, and can not be differentiated from said art by reason of the functional language herein set out.

Claim 36 provides for the device of claim 35 including in addition "electrically operated igniter controlled by said thermostat," and claim 37 defines the device of claim 35 with the addition of the limitation "in which said thermostat controls said motor." Those claims were rejected for the same reasons given for the rejection of claim 35, and we think properly so.

The Board of Appeals agreed with the decision of the Primary Examiner rejecting claims 38 and 39 as unpatentable by reason of being vague, functional, and indefinite. They read as follows:

"38. The combination with a heater that derives its heat from combustible fuel, of a pump for effectuating fuel flow to said heater, a circulating fan for passing a flow of air across a portion of said heater, means interconnecting the pump and fan to effect proportional speeds thereof and thereby effectuate a cooling, effect across said portion of said heater which is proportional to the heat generated by the heater and thereby prevent wide variations in temperature of said portion of said heater upon change in speed of said pump, means whereby the speed of said pump may be widely varied, electrical means operable to start and stop the pump, and a thermostat affected by the temperature of said portion for controlling said electrical means.

"39. The combination with a heater that derives its heat from combustile [sic] fuel, of a pump for effectuating fuel flow to said heater, a circulating fan for passing a flow of air across a portion of said heater, means interconnecting the pump

and fan to effect proportional speeds thereof and thereby effectuate a cooling across said portion of said heater which is proportional to the heat generated by the heater and thereby prevent wide variations in temperature of said portion of said heater upon change in speed of said pump; the last-recited means comprising a motor for driving both said pump and fan and including speed changing means for varying the speed of said motor, electrical means operable to ignite the combustible fuel at said heater, and a thermostat affected by the temperature of said portion for controlling said electrical means."

A mere reading of those claims, whose positive elements, as recited therein, comprise a pump, a heater, a fan means interconnecting the pump and fan which includes a motor, speed change means, electrical igniter means, and a thermostat for controlling the electrical ignition means, without showing the manner in which those elements are interconnected, but describing various functions which might or might not be performed in the operation of the list of elements depending on the manner of their interconnection, makes it clear to us that claims 38 and 39 are vague, functional, and indefinite.

Claim 40 was rejected as being drawn to an aggregation. The claim reads as follows: "40. In a heater with combustion control, the combination with a combustion space; a radiator which communicates with the combustion space to receive the exhaust gases therefrom; a place to be heated; a circulating fan for transferring the heat from said radiator to the place to be heated; a pump for effecting supply of fuel to said combustion space; a common motor, electrically driven, for propelling both said pump and said fan; means connected to said motor, pump, and fan to couple the three together and effectuate operation of all three at proportional speeds; and electric motor circuit for supplying current to the motor; and a thermostatic switch associated thermally with said radiator and depending for its operation upon the temperature in the close vicinity of the radiator, said switch comprising a thermostatic element, a sliding operating member which is moved in a first direction by the thermostatic element when the latter is rising in temperature and is moved in the other direction when the latter is falling in temperature, and means including contracts in series with said circuit for maintaining such contacts and the circuit closed as long as the thermostatic element is applying force on said operating member in the first direction and maintains the circuit broken when the thermostatic element is applying force on said sliding member in the other direction." The Primary Examiner held that claim 40 should be rejected on the ground of aggregation for the reason that it covers the aggregation of a heater structure and a thermostatic switch of general application. The examiner stated "Inasmuch as it is the heater structure which has been elected for prosecution in this application it is considered that the thermostatic switch structure should be eliminated from the claim. It appears to be obvious that the two instrumentalities are capable of completely independent use and furthermore that they are separately classified and searched." The board agreed with the reasoning of the examiner.

From a careful examination of claim 40, it seems obvious to us that the claim was properly rejected on the ground of aggregation for the reason advanced by the Primary Examiner and affirmed by the board.

 We have carefully considered the contentions of appellant with respect to all the involved claims and find them to be without merit.

Therefore, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, O'CONNELL, J., was not present at the argument of this case and did not participate in the decision.